Madison Tate Donaldson, *Pro Hac Vice* pending
MARC WHITEHEAD & ASSOCIATES, LLP
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713.228.8888
Facsimile: 713.225.0940
Email: madison@marcwhitehead.com

Joseph Creitz, Cal. Bar. No. 169552
Creitz & Serebin, LLP
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: 415-466-3090
Facsimile: 415-513-4475
Email: joe@creitzserebin.com

Attorneys for Plaintiff,
    PAMELA KLEHM-HUDDLESTON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA KLEHM-HUDDLESTON,<br><br>    Plaintiff,<br><br>v.<br><br>LINCOLN LIFE ASSURANCE COMPANY OF BOSTON,<br><br>    Defendant. | Case No.: 23-cv-2991<br><br>**COMPLAINT FOR WRONGFUL DENIAL OF BENEFITS UNDER ERISA**<br>**(29 U.S.C. § 1132)** |

## **PRELIMINARY STATEMENT**

1. Plaintiff PAMELA KLEHM-HUDDLESTON, hereinafter referred to as Plaintiff," brings this ERISA action against Lincoln Life Assurance Company of Boston Group Welfare Benefits Plan, in its capacity as Administrator of the Apple Inc. Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short-term, long-term and/or

waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of her employment with Apple Inc.

## PARTIES

2. Plaintiff is a citizen and resident of Houston, Texas.

3. Defendant Lincoln Life Assurance Company of Boston is a properly organized business entity doing business throughout the State of California, and in the Norther District of California. Defendant may be served with process by serving its registered agent, Corporation Service Company, doing business in California as CSC-Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833-3505.

4. The disability plan was formed and is administered within the Northern District of California.

## JURISDICTION AND VENUE

5. This court has jurisdiction to hear this suit pursuant to the Employee Retirement Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1332(a), (e), (f), (g) and 1101, *et seq* 28 U.S.C. § 1331, as this suit involves a federal question. Specifically, Plaintiff brings this action to enforce her rights 29 U.S.C. § 1132(a)(1)(B)., which provides ":[a] civil action may be brought…(1) by a participant or by a beneficiary … (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

6. Venue in the Northern District of California is proper because, under ERISA, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Venue also lies in the Northern District of California because Defendant can be found in the District. *See id*.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

7. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Plan, which is funded through Long Term Disability Plan Policy No. GF3-810-B72V5F-01.

8. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Apple Inc., with coverage beginning on January 1, 2018.

9 Said policy became effective January 1, 2018.

10. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

11. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

12. Defendant has a fiduciary obligation to administer the Plan fairly, with an eye single towards the interests of participants and beneficiaries, and to pay disability benefits according to the terms of the Plan.

13. Finally, pursuant its fiduciary duties, Defendant is required to take active steps to reduce bias ensure and ensure that claims are administered in a manner that is consistent with the interests of claimants.

14. Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. GF3-810-B72V5F-01 issued by Defendant.

15. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

16. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

17. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

18. In order for the Plan Administrator's decisions to be reviewed by this Court

under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

19. Except as stated in paragraph 20 below, benefit denials governed under ERISA are generally reviewed by the courts under a de novo standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

20. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

21. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

22. Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

23. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ.*, 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co.*, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

24. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

    i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);

    ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);

      iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);

      iv.    Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

      v.    Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);

      vi.    Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);

      vii.    Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

      viii.    Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);

      ix.    Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

      x.    Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

      xi.    Failure to obtain an appeal review that is conducted by a different non-subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

      xii.    Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

      xiii.    Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

25. Defendant's violations of the regulations were neither inadvertent nor harmless.

26. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

27. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

## ADMINISTRATIVE APPEAL

28. Plaintiff is a 56-year-old woman previously employed by Apple Inc. as a "Computer Support Specialist."

29. Computer Support Specialist is classified under the Dictionary of Occupational Titles as having a Light exertional level. This occupation also has an SVP of 7 and is skilled work.

30. This occupation was very demanding in that it required Plaintiff to assist customers with technical issues or questions relating to computer hardware or software devices, take phone calls from customers or communicating with them through messaging platforms, helping customers diagnose technical issues over the phone and speaking with them about installing hardware or software on their computers.

31. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on May 16, 2020.

32. Plaintiff alleges that she became disabled on May 19, 2020.

33. Plaintiff filed for short-term disability benefits with Defendant.

34. Short-term disability benefits were approved from May 19, 2020 through January 8, 2021.

35. Plaintiff filed for long-term disability benefits through the Plan administered by the Defendant.

36. The Plan defines "**Disability**" or "**Disabled**" as follows:

"**Disability**" or "**Disabled**" means:

i. *that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*

ii. *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education,*

KLEHM-HUDDLESTON v. LINCOLN, No. 23-cv-2991
COMPLAINT

6

*training, experience, station in life, and physical and mental capacity.*

37. The Plan defines "**Own Occupation**" as follows:

    "***Own Occupation***" *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began.*

38. Long-term disability benefits were denied.

39. The Plan provides for monthly benefits of $988.00.

40. On December 24, 2021, Defendant denied Plaintiff's long-term disability benefits.

41. Defendant's denial letter said, "Based on the medical documentation received in relation to the requirements of your occupation, you no longer meet the definition of disability" under the Own Occupation definition and allowed Plaintiff 180 days to appeal this decision.

42. Defendant's denial letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

43. Defendant's denial letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal. On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you believe would impact this benefit decision please submit it to us for consideration."

44. On June 21, 2022, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

45. Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

46. Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

47. On or about April 26, 2019 and September 3, 2019, Defendant's paid

consultant, Sherry A. Withiam-Leitch, M.D., neurology, performed peer reviews of Plaintiff's claim file.

48. On or about January 31, 2021, Defendant's paid consultant, Gale G. Brown, Jr., M.D., physical medicine and rehabilitation and internal medicine, performed a peer review of Plaintiff's claim file.

49. On or about September 22, 2021, Defendant's internal consultant, Debra A., RN, CCM, LNC-C, nurse disability consultant II, performed a paper review of Plaintiff's claim file.

50. On or about December 17, 2021, Defendant's paid consultant, Shruti Sanghvi, M.D., rheumatology, performed a "peer review" of Plaintiff's claim file.

51. On or about December 20, 2021, Defendant's internal consultant, Sarah South, M.Ed., CRC, vocational rehabilitation consultant, performed a paper review of Plaintiff's claim file.

52. On or about August 15, 2022 and October 17, 2022, Defendant's paid expert, Alfred Becker, M.D., internal medicine and rheumatology, performed "peer reviews" of Plaintiff's claim file.

53. Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because.

    a. The reviewers' opinions were infected by conflict and bias;

    b. The reviewers' conclusions lack foundation and are conclusory;

    c. The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

    d. The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

    e. The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

    f. The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g. The reviewers failed to acknowledge that medications neither effectively resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h. The reviewers based their opinions on a summary reports of other underqualified opinions; and

i. The reviewers' conclusions were inconsistent with the weight of the evidence.

54. Defendant's consultants completed their reports without examining Plaintiff.

55. Defendant notified Plaintiff that Defendant upheld its original decision to deny Plaintiff's claim for long-term disability benefits.

56. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

57. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

58. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

59. A physical examination, with a full file review, provides an evaluator with more information than a medical file review alone.

60. More information promotes accurate claims assessment.

61. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

62. Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132(a)(1)(B).

## **MEDICAL FACTS**

63. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

64. Plaintiff suffers from rheumatoid arthritis (RA) with multiple site rheumatoid factors without organ or systems involvement; poly-osteoarthritis; fibromyalgia; sleep

apnea; morbid obesity; essential hypertension; pure hypercholesterolemia, unspecified; diplopia; amblyopia of both eyes; vertigo; and lateral epicondylitis of the right elbow.

65. Treating physicians document continued chronic pain, as well as weakness.

66. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

67. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

68. Plaintiff's multiple disorders have resulted in restrictions in activity, and have significantly curtailed her ability to engage in any form of exertional activity.

69. Physicians have prescribed Plaintiff with multiple medications in an effort to address her multiple symptoms.

70. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

71. Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, meaning an 8-hour day, day after day, week after week, month after month.

72. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

73. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

74. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

75. However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

## **DEFENDANT'S CONFLICT OF INTEREST**

76. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff

and each payment depletes Defendant's assets.

77. Defendant's determination was influenced by its conflict of interest.

78. Defendant's reviewing experts are not impartial.

79. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

80. Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

81. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

82. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

83. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:

## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132(a)(1)(B)

84. Plaintiff incorporates those allegations contained in paragraphs 1 through 83 as though set forth at length herein.

85 Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

    (a) Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

    (b) Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

    (c) Defendant's interpretation of the definition of disability contained in

the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

(d) Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, **Plaintiff prays judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she is entitled to all past due long-term disability benefits yet unpaid;

B. Order Defendant to pay past long-term disability benefits retroactive to November 9, 2021 to the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long-term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E. For such other and further relief as may be deemed equitable, just, and proper by the Court.

Dated: June 20, 2023                    Respectfully submitted,

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.

CREITZ & SEREBIN LLP

By:     /s/ Joseph A. Creitz
        Joseph A. Creitz
        ATTORNEYS FOR PLAINTIFF,
        PAMELA KLEHM-HUDDLESTON